IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| ANNETTE CARROLL, ) | Civil Action No. 3:09-1761-JFA-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL SECURITY ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB").

## **ADMINISTRATIVE PROCEEDINGS**

Plaintiff applied for DIB on June 1, 2006, alleging disability as of January 3, 2006, due to arthritis and problems with her knees. (Tr. 118-120, 130). Plaintiff's application was denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). After a hearing held January 9, 2009, at which Plaintiff appeared and testified, the ALJ issued a decision dated February 13, 2009, denying benefits. After hearing the testimony of a vocational expert ("VE"), the ALJ concluded that work exists in the national economy which Plaintiff can do.

Plaintiff was forty-nine years old at the time of the ALJ's decision. She has a high school education with past relevant work as a weaver. (Tr. 26, 41).

The ALJ found (Tr. 24-30):

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since January 3, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: degenerative joint disease of the bilateral knees, status post right total knee arthroscopy, and osteorathritis of the left shoulder (20 CFR 404.l521 *et seq.*).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform work as defined in 20 CFR 404.1567(a) except no lifting or carrying over 10 pounds occasionally and 10 pounds frequently; no standing and/or walking over 2 hours out of an 8-hour workday; only occasional stooping, climbing of stairs or ramps, crawling, or balancing; no crouching, kneeling, or climbing of ladders, ropes, or scaffolds; and only occasional use of foot pedals or other controls with the bilateral lower extremities.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on October 29, 1959 and was 46 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to a determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 3, 2006 through the date of this decision (20 CFR 404.1520(g)).

On June 10, 2009, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (Tr. 1-6). Plaintiff filed this action in the United States District Court on July 1, 2009.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

## **MEDICAL EVIDENCE**

On February 26, 2002, Plaintiff was examined by Dr. Joseph P. Jackson, an orthopaedist, for complaints of pain and swelling in her knee from standing at work for up to twelve hours per day. X-rays revealed an avulsion fracture of the fibula head and evidence of old trauma to her knee. Dr. Jackson administered Cortisone and Hyalgan injections. Tr. 187-189.

Dr. J. Carl Kearse, a family practitioner, examined Plaintiff for complaints of bilateral knee pain and difficulty with walking in March 2003. He diagnosed tendinitis, injected her left knee with

Xylocaine and Depomedrol, and prescribed Vioxx. Tr. 291. Plaintiff reported no improvement in April 2003. Tr. 292.

On June 30, 2003, Plaintiff returned to Dr. Jackson. He diagnosed arthritis and administered a Cortisone injection. He gave her Hyalgan injections in August and September. Tr. 183-185.

Dr. Thomas N. Joseph, an orthopedic surgeon, examined Plaintiff for complaints of "dull and achy" pain in her right lower leg, which she described as "moderately bothersome." Tr. 236. Dr. Joseph's examination revealed that Plaintiff had full strength, full range of motion, slight swelling, tenderness, and a cystic lesion in her right knee (which he aspirated). Tr. 236. In October 2005, Plaintiff reported that the cyst aspiration and Naproxyn provided little relief. Dr. Joseph ordered an MRI, which revealed osteoarthritis and a torn meniscus. He recommended arthroscopic surgery. Tr. 234-235.

Dr. Kearse prescribed Allegra, Prednisone, and Darvocet for Plaintiff's complaints of right ear, shoulder, bilateral knee, and back pain on October 24, 2007. Tr. 197. Approximately a week later, Plaintiff complained of severe pain in her right knee. Dr. Kearse's examination revealed bowing, tenderness, and a large cyst. He injected Plaintiff's knee with Xylocaine and Depomedrol and encouraged her to have surgery. Tr. 195.

On December 19, 2005, x-rays of Plaintiff's right knee revealed severe osteoarthritis, varus deformity, subchondral sclerosis, joint space narrowing, and osteophyte formation. Tr. 233. Dr. Joseph performed an arthroscopic partial medial meniscectomy and excision of ganglion cyst of Plaintiff's right knee on January 3, 2006. Tr. 220-222.

On January 18, 2006, Plaintiff complained to Dr. Joseph of continued soreness and limited range of motion in her right knee. Dr. Joseph noted that Plaintiff's knee was neurovascularly intact

with no instability or effusion. He recommended weight bearing as tolerated, exercises, application of heat and ice, and the use of crutches if needed. Tr. 230. On February 6, 2006, Dr. Joseph ordered a knee brace and recommended that Plaintiff continue sedentary duty at work. Tr. 229.

On March 13, 2006, Dr. Kearse cleared Plaintiff for knee replacement surgery and administered an injection in her left trapezius muscle for complaints of left shoulder pain. He diagnosed osteoarthritis of Plaintiff's right knee and fibrositis of her shoulder and trapezius muscle. Tr. 194.

Dr. Joseph noted on April 10, 2006, that Plaintiff's symptoms of osteoarthritis in her right knee had worsened since her surgery and that nonoperative treatments had failed. Tr. 227. He performed a right total knee arthroplasty on April 11, 2006. Tr. 204-214. On April 21 and 28, 2006, Dr. Joseph noted that Plaintiff was "progressing well with physical therapy." Tr. 225-226.

Plaintiff complained of severe right knee pain on May 12, 2006. Dr. Joseph ordered x-rays which showed a well-placed knee replacement without evidence of loosening. Tr. 239. On May 31, 2006, Plaintiff complained to Dr. Joseph of moderate pain. He noted she was using a crutch for ambulation. Tr. 238.

On June 7, 2006, Dr. Joseph observed that Plaintiff had some improvement with physical therapy and was using a crutch for ambulation. Examination revealed mild swelling, limited range of motion, and no instability or neurovascular abnormalities in her right knee. Dr. Joseph noted that Plaintiff was "slowly progressing." He prescribed physical therapy, exercises, and pain medication. Tr. 341. On July 5, 2006, Plaintiff reported that her knee pain was no better since surgery. Dr. Joseph's examination revealed no instability, reduced range of motion, tenderness, and mild swelling. X-rays showed a well-placed total knee replacement with no evidence of loosening. Dr. Joseph

injected Plaintiff's knee, prescribed physical therapy and weight bearing as tolerated, and referred her to Dr. Andrew W. Piasecki, another orthopaedic surgeon, for evaluation. Tr. 339. On July 20, 2006, Dr. Piasecki diagnosed symptomatic medial plica (folds of the synovial membrane of the knee joint) of the right knee and administered an injection. Tr. 338.

Dr. Forrest Pommerenke examined Plaintiff at the request of the Commissioner on August 8, 2006. Plaintiff complained of severe-to-moderate pain in her right knee, said she was a candidate for surgery on her left knee, and complained of arthritis in her knees and left shoulder. Dr. Pommerenke's examination revealed that Plaintiff had a very slow antalgic gait, swelling and decreased flexion in her right knee; normal range of motion in her left knee; 5/5 strength in her upper extremities; 4/5 strength in her lower extremities; normal gross and fine motor movements, coordination, reflexes, and sensation; normal mental status; and full range of motion and normal function of her left shoulder. A left shoulder x-ray revealed well-maintained joint spaces and clavicular spurring. Dr. Pommerenke's diagnoses included status post total right knee replacement with residual pain and difficulty with ambulation and sustained standing, moderate-to-severe osteoarthritis of the left knee, well-controlled hypertension, and left shoulder pain (possible osteoarthritis). He opined that Plaintiff had a fairly poor response to her last surgery, but that significant improvement was possible. Tr. 241, 243-252.

Dr. Richard Weymouth, a state agency physician, reviewed Plaintiff's medical records and assessed her residual functional capacity ("RFC") on August 18, 2006. He opined that Plaintiff could lift twenty pounds occasionally and ten pounds frequently; stand and/or walk for six hours and sit for six hours in an eight-hour day; and occasionally climb, balance, stoop, kneel, crouch, and crawl. Tr. 255-262.

On August 28, 2006, Plaintiff complained of achy and dull right knee pain. Dr. Joseph found minimal swelling, no instability, slight tenderness, and limited flexion. Tr. 337. Dr. Thomas E. Brandt, a pain management specialist, examined Plaintiff (upon referral from Dr. Joseph) on September 18, 2007. Plaintiff complained of depression and pain in her hands, shoulder, back, and knees. She complained of pain ranging from three to seven on a scale of one to ten. Dr. Brandt observed that Plaintiff had full strength in her upper and lower extremities, except for reduced (4/5) strength in her hamstring and quadriceps muscles; a slow, flat-footed, antalgic gait; and spasms in her neck and shoulder muscles. He diagnosed lower extremity pain of mixed etiology; knee arthralgia; apparent underlying peripheral polyneuropathy, which was contributing to pain and gait disturbance; cervicothoracic myofascial pain; left suprascapular arthralgia; and depression. Diagnostic studies were recommended and a neoprene knee sleeve, Lidoderm patches, Lyrica, Cymbalta, and Zanaflex were prescribed. Tr. 265-272. Plaintiff complained to Dr. Brandt of burning pain in her right knee and adverse side effects from Lidoderm on October 17, 2006. Tr. 263.

On November 8, 2006, Plaintiff reported to Dr. Joseph that Dr. Brandt's treatment had not benefitted her. Bone scans of her lower extremities revealed results consistent with arthritic changes. Tr. 335-336. On December 11, 2007, Plaintiff was reexamined by Dr. Piasecki who was unable to find any mechanical or objective cause of her pain. He diagnosed right knee pain status post total knee arthroplasty. Tr. 334.

On January 14, 2008, Plaintiff complained to Dr. Kearse of right arm pain. No swelling was noted, she had normal range of motion, and she had tenderness to palpation. Dr. Kearse diagnosed tendinitis of Plaintiff's arm and prescribed Daypro. Tr. 302. Plaintiff complained, on June 10, 2008, that her knees were "killing" her, she could not walk, and she had to use a cane. Dr. Kearse's

7

examination revealed tenderness, decreased range of motion, and crepitus in her left knee. He diagnosed acute flare up of arthritis and injected her left knee. Dr. Kearse stated that Plaintiff had difficulty walking even five feet due to severe knee pain and opined that she was totally disabled and would never get any better. Tr. 284, 303. Dr. Kearse completed a statement on November 24, 2008, in which he opined that Plaintiff could occasionally lift less than ten pounds; stand/walk for less than two hours and sit for less than six hours in an eight-hour day; never climb, balance, stoop, crouch, kneel, or crawl; had limited ability to push and pull; and should avoid exposure to heights, moving machinery, and temperature extremes. Tr. 330-333.

On April 2, 2009, after the ALJ's decision, Dr. Joseph provided an affidavit which Plaintiff submitted to the Appeals Council. Tr. 12-13, 179-180. Dr. Joseph stated that Plaintiff continued to experience right knee pain since her knee replacement and that her left knee problems, caused by osteoarthritis, had worsened. He could not explain the cause of her right knee pain, but did not doubt that her discomfort was real. Dr. Joseph noted that Plaintiff had an antalgic gait and walked with a cane. He opined that Plaintiff was not capable of prolonged standing or walking, prolonged sitting caused pain and stiffness in her lower extremities, this made sedentary work impossible, and she was incapable of full-time employment. Tr. 12-13, 179-180.

## **HEARING TESTIMONY**

At the hearing before the ALJ, Plaintiff testified that she drove, went to church, went grocery shopping (using an electric cart) with her daughter, did laundry, helped her daughter prepare meals, and did no housework. Tr. 39-40, 46-47. She stated that she had more pain in her right knee at the time of the hearing than she did before her knee replacement, and that prolonged sitting and cold air caused her knees to ache. Plaintiff testified that her leg swelled and hurt if she did not elevate it. Tr.

42-44, 50. She estimated she could sit for eight hours, but could sit for only thirty minutes if her leg was not elevated. Tr. 53-54. Plaintiff stated that she could walk for only a few feet, used a cane to walk, and could stand for about a half hour. Tr. 44-45. She testified that she could lift no more than five pounds because of pain in her shoulder and leg. Tr. 47. Plaintiff said that she took approximately one Hydrocodone pill for pain relief every other day, and her medication made it hard for her to focus. Tr. 48-49. She said that when she used her right arm too much it ached. Tr. 50. Plaintiff testified that she relied on over-the-counter pain medication for pain relief from October 2006 to November 2007. Tr. 56.

The ALJ asked the VE to consider a claimant of Plaintiff's age, education, and work experience who had the RFC to lift and carry no more than ten pounds occasionally and ten pounds frequently; stand and walk for no more than two hours in an eight-hour workday; occasionally stoop, crawl, balance, and climb stairs and ramps; never crouch or climb ladders or scaffolds; and was restricted to no more than occasional use of bilateral extremities for foot pedals or other controls. In response, the VE testified that such a claimant could perform the sedentary jobs of security identity clerk, telephone solicitor, or envelope addresser. Tr. 60-62.

## **DISCUSSION**

Plaintiff alleges that the ALJ erred by (1) failing to give controlling weight to her treating source providers, and (2) relying primarily on administrative findings. The Commissioner contends that the decision that Plaintiff was not disabled under the Social Security Act is supported by substantial evidence and free of legal error.

9

### A. **Treating Physician**

Plaintiff alleges that the ALJ failed to give controlling weight to her treating source providers (Dr. Kearse and Dr. Joseph). The Commissioner contends that the ALJ properly found that Dr. Kearse's opinions of disability were not entitled to controlling weight. Additionally, the Commissioner contends that Dr. Joseph's opinion was not rendered until after the ALJ's decision and that the Appeals Council considered Dr. Joseph's opinion and properly found that it did not provide a basis for changing the ALJ's decision.

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. § 416.927(d)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro v. Apfel, 270 F.3d at 178 (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992)).

Under § 404.1527, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors to determine the weight to be afforded the physician's opinion: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527. Social Security Ruling 96-2p

provides that an ALJ must give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p.

The ALJ's decision to discount the opinions of Dr. Kearse is supported by substantial evidence and correct under controlling law. Dr. Kearse noted on June 10, 2008 that Plaintiff had difficulty walking due to severe knee pain. He opined that Plaintiff was totally disabled. An ALJ is not bound by a conclusory opinion of disability or entitlement to benefits, even when rendered by a treating physician, since the issue of disability is the ultimate issue in a Social Security case and that issue is reserved for the Commissioner. See 20 C.F.R. § 404.1527(e)(1); Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027 (10th Cir. 1994); see also Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002)(statements that a claimant could not be gainfully employed are not medical opinions, but opinions on the application of the statute, a task assigned solely to the discretion of the Commissioner); King v. Heckler, 742 F.2d 968 (6th Cir. 1984); Montijo v. Secretary of Health & Human Servs., 729 F.2d 599, 601 (9th Cir.1984).

Plaintiff appears to allege that the ALJ erred in discounting Dr. Kearse's opinion that she could lift/carry less than ten pounds on an occasional basis; stand/walk less than two hours and sit less than six hours in an eight-hour day. See Tr. 330-333. The ALJ did not err in discounting this opinion as it was not substantially supported by other evidence in the record, was inconsistent with Dr. Kearse's own records, relied in part on an assessment of an impairment for which Plaintiff received no treatment, and was outside Dr. Kearse's expertise. See Tr. 23-24. Other evidence in the record, including Dr. Weymouth's opinion that Plaintiff could lift up to twenty pounds and stand and/or walk for six hour and sit for six hours in an eight-hour day (Tr. 256-257), supported the ALJ's conclusion. Dr. Piasecki noted that he was unable to find any mechanical or objective basis for

Plaintiff's symptoms. Tr. 334. Dr. Pommerenke found that Plaintiff had full strength in her upper extremities, nearly full strength (4/5) in her lower extremities, normal coordination, and normal gross and fine motor movements. Tr. 251. Dr. Brandt noted that Plaintiff had full strength in her upper and lower extremities with the exception of 4/5 strength in her hamstring and quadriceps muscles. Tr. 270. Additionally, Dr. Joseph noted that Plaintiff's pain was "achy and dull in quality" after her right knee replacement, as opposed to the "severe" pain opined by Dr. Kearse, and Dr. Joseph's examination revealed only minimal swelling, slight tenderness, and no instability. Tr. 335-336. The ALJ also properly considered that Dr. Kearse was a general practitioner, not a specialist in orthopedics, in deciding to give the opinion limited weight. See 20 C.F.R. § 404.1527(d)(5)(more weight is generally given to the opinion of a specialist). Dr. Kearse's opinion (as noted by the ALJ) was inconsistent with his own records which indicate that he did not treat Plaintiff between March 13, 2006 and January 14, 2008, examined her knee only one time in 2008, and his findings on that occasion (tenderness, decreased range of motion, and crepitus) were inconsistent with the severe limitations of his November 2008 opinion.

Dr. Joseph's opinion was not made until after the ALJ's decision. The Appeals Council, however, properly considered the opinion and found that it did not provide a basis for changing the ALJ's decision. The Appeals Council specifically noted that Dr. Joseph had not examined Plaintiff in over nineteen months before he rendered his opinion, the last time Dr. Joseph examined Plaintiff he noted that Plaintiff complained of achy and dull pain, and Dr. Joseph's notes did not provide any indication that Plaintiff's knee impairment led to any limitations in sitting or that Plaintiff complained to him of such limitations. Tr. 2. Dr. Joseph's opinion that Plaintiff was disabled by pain is inconsistent with her testimony that she relief on over-the-counter medication for pain relief from

12

October 2006 to November 2007 (Tr. 56), and she generally only took one Hydrocodone pill every other day for pain relief (Tr. 48-49). Inconsistencies between a claimant's alleged symptoms and the evidence of record may support a finding that the claimant is not fully credible. See Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Dr. Joseph's opinion that Plaintiff was incapable of prolonged sitting was also inconsistent with the findings of Drs. Weymouth, Piasecki, Pommerenke, and Brandt (as discussed in connection with Dr. Kearse's opinion). See Tr. 243-53, 255-262, 270-272, 334.

### B. Administrative Findings

Plaintiff alleges that the ALJ erred by primarily relying on the administrative findings of Dr. Pommerenke as well as a medical evaluation by Latoya Stevens and the physical RFC assessment by Dr. Richard Weymouth. The Commissioner contends that the ALJ did not adopt "administrative findings" in denying Plaintiff's claim.

Contrary to Plaintiff's argument, the ALJ did not adopt the "administrative finding" of Dr. Weymouth. Dr. Weymouth opined that Plaintiff could perform a range of light work. The ALJ, based on all the evidence of record, however, found that Plaintiff could perform a limited range of sedentary work. The findings of Dr. Weymouth that Plaintiff could perform light work provided support for the ALJ's findings. See 20 C.F.R. § 404.1527(f)(2) and 416.927(f)(2); SSR 96-6p ("Findings of fact made by State agency ... [physicians and psychologists]... regarding the nature and severity of an individual's impairments must be treated as expert opinion of non-examining sources at the [ALJ] and Appeals Council level of administrative review.").

Stevens, a claims examiner, did not make any findings on which the ALJ relied. The ALJ could properly consider, along with all the other evidence, Plaintiff's statement (to Stephens -Tr. 141) that she obtained relief from her shoulder pain by taking pain relief medication. See Sykes v. Bowen,

13

854 F.2d 284, 286 (8th Cir. 1988)(Commissioner may rely upon the claimant's own statements of his or her limitations in evaluating the claimant's disability status). The ALJ also properly considered Dr. Pommerenke's notes, the notes of Plaintiff's treating and other examining physicians, and the non-medical evidence, in determining that Plaintiff was not disabled.

## **CONCLUSION**

Despite Plaintiff's claims, she fails to show that the Commissioner's decision was not based on substantial evidence. This Court may not reverse a decision simply because a plaintiff has produced some evidence which might contradict the Commissioner's decision or because, if the decision was considered de novo, a different result might be reached.

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, Richardson v. Perales, supra. Even where a plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, Blalock v. Richardson, supra. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. Shively v. Heckler, supra. It is, therefore,

RECOMMENDED that the Commissioner's decision be **affirmed**.

Joseph R. McCrorey
United States Magistrate Judge

May 3, 2010
Columbia, South Carolina